UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| SHANE E. ARCHER, | 5:23-CV-05002-RAL |
| Plaintiff, | |
| vs. | OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS AND § 1915A SCREENING |
| TAVIS LITTLE, CHIEF LAWRENCE COUNTY JAIL, INDIVIDUAL AND OFFICIAL CAPACITY; AMBER RICHIE, DIRECTOR LAWRENCE COUNTY PUBLIC DEF OFFICE, INDIVIDUAL AND OFFICIAL CAPACITY; JAIL STAFF, GUARDS LAWRENCE COUNTY JAIL, INDIVIDUAL AND OFFICIAL CAPACITY; BRUCE BOURE, ATTORNEY AT LAW, INDIVIDUAL AND OFFICIAL CAPACITY; MOLLY, PARALEGAL/INVESTIGATOR FOR PUBLIC DEFENDERS OFFICE, INDIVIDUAL AND OFFICIAL CAPACITY; STAFF, MAIL ROOM STAFF, CLERK'S OFFICE, INDIVIDUAL AND OFFICIAL CAPACITIES; AGENT D. ROSE, AGENT DCI, INDIVIDUAL AND OFFICIAL CAPACITY; JOHN FITZGERALD, STATES ATTORNEY, INDIVIDUAL AND OFFICIAL CAPACITY; TIM BANUARD, ATTORNEY, INDIVIDUAL AND OFFICIAL CAPACITY; AUTHORITIES, BUTTE COUNTY AUTHORITIES, INDIVIDUAL AND OFFICIAL CAPACITIES, | |
| Defendants. | |

Plaintiff Shane E. Archer, an inmate at the Lawrence County Jail, filed a pro se civil

rights lawsuit under 42 U.S.C. § 1983.  Doc. 1.  Archer moves for leave to proceed in forma

pauperis and has filed a prisoner trust account report. Docs. 2, 3. Archer also moves for appointment of counsel. Doc. 5.

## I.      Motion for Leave to Proceed in Forma Pauperis

Under the Prison Litigation Reform Act, a prisoner who "brings a civil action or files an appeal in forma pauperis . . . shall be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). The Court may, however, accept partial payment of the initial filing fee where appropriate. Therefore, "[w]hen an inmate seeks pauper status, the only issue is whether the inmate pays the entire fee at the initiation of the proceeding or over a period of time under an installment plan." Henderson v. Norris, 129 F.3d 481, 483 (8th Cir. 1997) (per curiam) (alteration in original) (quoting McGore v. Wrigglesworth, 114 F.3d 601, 604 (6th Cir. 1997)).

The initial partial filing fee that accompanies an installment plan is calculated according to 28 U.S.C. § 1915(b)(1), which requires a payment of 20 percent of the greater of:

(A)      the average monthly deposits to the prisoner's account; or

(B)      the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

Archer reports an average monthly balance for the past six months in his prisoner trust account of $10.00 and an average monthly deposit of $10.00. Doc. 3 at 1. Based on the information regarding Archer's prisoner trust account, this Court grants Archer leave to proceed in forma pauperis ad waives the initial partial filing fee. See 28 U.S.C. § 1915(b)(4) ("In no event shall a prisoner be prohibited from bringing a civil action . . . for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee.").

In order to pay his filing fee, Archer must "make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." 28 U.S.C. § 1915(b)(2). The statute

places the burden on the prisoner's institution to collect the additional monthly payments and forward them to the court as follows:

> After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

28 U.S.C. § 1915(b)(2). The installments will be collected pursuant to this procedure. The Clerk of Court will send a copy of this order to the appropriate financial official at Archer's institution. Archer remains responsible for the entire filing fee, as long as he is a prisoner. See In re Tyler, 110 F.3d 528, 529–30 (8th Cir. 1997).

## II.     1915A Screening

### A.     Factual Allegations of Archer's Complaint

Archer claims that Lawrence County Jail staff have prevented him from accessing the courts. Doc. 1 at 5. He claims that the Lawrence County Jail has no federal law books, no law library, and no law books written more recently than 1998. Id. He alleges that there is no area to study or participate in his legal defense. Id. Archer states that he was not provided a phone book for twenty-four days to hire an attorney and that he was finally offered one from 2016. Id. He asserts that he was not provided the phone number for the Clerk of Court in Colorado where he had pending criminal charges. Id. Archer alleges that the Chief of the Lawrence County Jail, Tavis Little, and other jail staff lied when they told him that his application for a court-appointed attorney had been faxed to the Butte County Clerk of Court, where he faced additional charges. See id. at 5, 10–11. He claims that Lawrence County Jail staff have prevented him from mailing a petition for writ of habeas corpus to Butte County. Id. at 11. He states that Butte County and Lawrence County officials refused to allow him to be seen in court for his Butte County charges

3

until after his Lawrence County charges were resolved. See id. at 9–10, 17–18. He alleges that Lawrence County Jail staff never responded to any of his grievances. Id. at 5-7, 15. He claims that Lawrence County Jail staff opened and read his legal mail and that his legal mail sometimes disappeared. Id. at 16. He also claims that his legal phone calls were monitored and recorded. Id. Archer states that the Lawrence County Jail has denied him typing paper, legal envelopes, and the ability to mail legal filings. Id. at 15. Archer claims that he has had property lost and evidence destroyed as a result of defendants' actions. Id. at 5.

Archer alleges that Amber Richie, a Lawrence County Public Defender, lied to him and repeatedly continued his criminal case. Id. at 5. He states that she and Molly, a paralegal for the Lawrence County Public Defender's Office, confirmed an email from the Lawrence County Sheriff's Office to Butte County officials regarding his arrest. Id. at 9–10. He alleges that Richie lied about attempting to contact the Clerk of Court in another county, resulting in Archer being charged with failure to appear, a felony. Id. at 5, 12. He asserts that Richie claimed to be pursuing his medical records to help with his case and did not acquire the records. Id. He claims that Richie told him the medical records had been sent to the judge, but he later received a release form from a jail employee, indicating that the records had not yet been sent. Id. at 12. He also claims that Richie never had him sent to a medical specialist to evaluate his bad memory, which he alleges is relevant to his criminal trial. See id. Archer states that Richie took over sixty days to go over discovery with him. Id. at 5. He asserts that Richie failed to contact his Codington County attorney, Bruce Boure, regarding his bond. Id. at 13–14. Specifically, he claims that Richie called Boure and sent him one letter but that she failed to follow up with further phone calls and letters. Id. at 14. Archer alleges that Boure claimed that he would call Lawrence County to see how he could get Archer's warrant removed and that Boure failed to do this or otherwise communicate

with Archer, even after Archer repeatedly called Boure. Id. He alleges that Boure continued to refuse to communicate and lie about what he had previously told Archer. Id.

Archer claims that State's Attorney John Fitzgerald has engaged in several forms of misconduct regarding his criminal charges. See id. at 12-13. He claims that at a criminal hearing to move his case to circuit court, Fitzgerald told the magistrate judge that there were no prior complaints on file but that Archer "has had stuff like this before[.]" See id. at 13. He also claims that Fitzgerald violated his rights by amending the complaint to change a charge from a class five felony to a class four felony and by filing a habitual criminal enhancement. Id. Archer states that Fitzgerald moved his case to a "higher position of authority" in violation of his rights. See id. He asserts that attorney Tim Banuard[1] knows of evidence that could exonerate him and has not provided this information to "proper persons" so his cases could be dismissed. Id. at 16. He also asserts that authorities in Butte County have denied him access to court for two months. Id. at 17.

Archer states that Lawrence County Jail staff have twice denied him prescription glasses recommended by medical staff. Id. at 6, 15. He claims that his eyes are sensitive to light and that bright lights are on in the jail all day long, causing him headaches for months. Id. He alleges that he was denied glasses because he did not have money to pay for them but has learned that the glasses could be billed to him. Id. at 15. He also alleges that the lack of glasses has impeded his ability to access the courts. Id. at 5. Archer asserts that he was told he could use his rescue inhaler, which is prescribed to be used as needed, at med pass time and that it took twenty minutes for jail staff to bring him his inhaler when he hit the emergency call button during an asthma attack. See id. at 6. He claims that he was deliberately exposed to COVID until he tested positive for the

---

[1] Archer names Tim Banuard as a defendant in this lawsuit. Doc. 1 at 2. In his complaint, Archer alleges that "Tim B" withheld exonerating evidence. Id. at 16. For screening purposes, this Court assumes that "Tim B" is defendant Tim Banuard. See id.

virus, even though as a diabetic over fifty years old with asthma and heart problems, he was especially at risk. Id. at 6–7. Archer states that several necessities that he could not afford to purchase were not otherwise provided to him in a form that he could use. Id. at 6. He claims that he was not provided lotion or oil for dry skin caused by his diabetes. Id. at 6. He alleges that he was allergic to the soap provided to indigent inmates and that he could not afford to purchase other soap or body wash. Id. He also alleges that the deodorant provided to indigent inmates caused his skin to break out. Id. He claims that the razors provided to indigent inmates were not suited to his sensitive skin and that he could not hold them because of neuropathy in his hands. Id. He states that he was not provided an extra mattress despite suffering from crushed discs in his neck and back, causing back pain. Id.

Archer asserts that individuals in the jail have made threats towards him, his wife, and his kids on two separate occasions. Id. at 7. He claims that Little, other Lawrence County Jail staff, and South Dakota Division of Criminal Investigation Agent D. Rose knew of these threats and did not investigate them. See id. at 7, 16. He also claims that no one has interviewed him to "find out proof and location of weapon[.]" Id. at 7. Archer alleges that Little and other staff made his personal information available to all inmates, that this information is still being used in threats, and that no one has addressed these threats. Id. at 7, 16. He states that people are attempting to contact his wife[2] in order to "make sure [he] live[s] in fear" worrying about her safety. Id. at 16. He also states that this has caused him bad mental health issues. Id. at 7.

Archer brings claims for violation of his rights under the Fourteenth Amendment. Id. at 5–7. He brings claims for inadequate medical care, lack of access to the court, and threats to his

---

[2] Archer refers to this person as his "girlfriend – wife – co-defendant" and his "wife/girlfriend[.]" Doc. 1 at 16.

safety. See id. He also seeks to bring a claim under 18 U.S.C. § 242, a criminal statute

regarding the deprivation of rights. Id. at 9. Archer asks for five million dollars and additional

punitive damages. Id. at 8. He also seeks an immediate release from jail, a grant of parole, and a

public apology. Id. Construing his complaint liberally, he also seeks better legal supplies at the

Lawrence County Jail, the medical accommodations that he claims defendants have denied him,

and an investigation of the threats against him and his family. See id. at 5-7.

**B.      Legal Standard**

A court when screening under § 1915A must assume as true all facts well pleaded in the

complaint. Estate of Rosenberg v. Crandell, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights

complaints must be liberally construed. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam)

(citation omitted); Bediako v. Stein Mart, Inc., 354 F.3d 835, 839 (8th Cir. 2004) (citation omitted).

Even with this construction, "a *pro se* complaint must contain specific facts supporting its

conclusions." Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); see also

Ellis v. City of Minneapolis, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam) (citation omitted).

Civil rights complaints cannot be merely conclusory. Davis v. Hall, 992 F.2d 151, 152 (8th Cir.

1993) (per curiam) (citation omitted); Parker v. Porter, 221 F. App'x 481, 482 (8th Cir. 2007) (per

curiam) (citations omitted).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels

and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Bell

Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation omitted). If a complaint does

not contain these bare essentials, dismissal is appropriate. See Beavers v. Lockhart, 755 F.2d 657,

663–64 (8th Cir. 1985). Twombly requires that a complaint's "[f]actual allegations must be

enough to raise a right to relief above the speculative level on the assumption that all the allegations

in the complaint are true[.]"  550 U.S. at 555 (internal citation omitted); see also Abdullah v. Minnesota, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting that a complaint "must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory" (citing Twombly, 550 U.S. at 553–63)).  Further, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely."  Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (internal quotation omitted) (quoting Twombly, 550 U.S. at 556).  Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b).

C.       **Archer's Causes of Action**

1.       **Conspiracy Claims**

Archer brings claims under 18 U.S.C. § 242, a criminal statute regarding the deprivation of rights.  Doc. 1 at 9.  This Court has ruled that there is no private right of action under this criminal statute.  Mousseaux v. U.S. Comm'r of Indian Affs., 806 F. Supp. 1433, 1437 (D.S.D. 1992); see also United States v. Wadena, 152 F.3d 831, 846 (8th Cir. 1998) ("Only the United States as prosecutor can bring a complaint under 18 U.S.C. §§ 241–242 . . . These statutes do not give rise to a civil action for damages."  (omission in original) (quoting Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir. 1989))).  Thus, Archer cannot state a claim under 18 U.S.C. § 242.  Archer's claims under 18 U.S.C. § 242 are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

Construing Archer's complaint liberally, he also brings a civil claim for conspiracy to deprive him of his rights under § 1983.  See Doc. 1 at 14-17.  To plead a civil conspiracy under § 1983, a plaintiff must show "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action to be taken; (4) the commission of one or more unlawful overt acts; and (5) damages as the proximate result of the conspiracy."  Livers v. Schenck, 700 F.3d 340, 360–61 (8th Cir. 2012) (quoting In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig., 113 F.3d 1484, 1498 (8th Cir. 1997)).  "The plaintiff is additionally required to prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim."  White v. McKinley, 519 F.3d 806, 814 (8th Cir. 2008) (citing Askew v. Millerd, 191 F.3d 953, 957 (8th Cir. 1999)).  A plaintiff must allege "specific facts tending to show" a meeting of the minds.  Murray v. Lene, 595 F.3d 868, 870 (8th Cir. 2010) (citations omitted).

Here, Archer fails to allege sufficient facts to show a meeting of the minds between the defendants.  Although he makes several allegations regarding violations of his rights, he does not allege facts tending to show an agreement between defendants to violate his rights.  See Doc. 1 at 5–7, 9–18.  Many of his claims rely on allegations that defendants failed to communicate with each other, rather than that they communicated with each other and agreed to violate his rights.  See id. He makes no allegations that demonstrate a meeting of the minds.  See id.  Thus, his conspiracy claims under 42 U.S.C. § 1983 are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 2.    Claims Against Amber Richie and Molly

Archer brings claims against Richie, a Lawrence County Public Defender, and Molly, a paralegal investigator for the Lawrence County Public Defender's Office.  See id. at 2-3.  A § 1983

claim requires proof that the defendant was acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted). The Supreme Court of the United States has stated that "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." Polk County v. Dodson, 454 U.S. 312, 325 (1981). Rather than act under color of state law, the public defender serves an adversarial function to the state when representing a client. See id. at 320. Thus, Richie and Molly are private parties and not state actors. See id. at 325. If a private party "is a willful participant in joint action with the State or its agents[,]" that party has acted under color of state law for § 1983 purposes. Dennis v. Sparks, 449 U.S. 24, 27 (1980). The United States Court of Appeals for the Eighth Circuit has held that "a plaintiff seeking to hold a private party liable under § 1983 must allege, at the very least, that there was a mutual understanding, or a meeting of the minds, between the private party and the state actor." Mershon v. Beasley, 994 F.2d 449, 451 (8th Cir. 1993).

Here, Archer fails to allege facts sufficient to show that there was a mutual understanding or a meeting of the minds between Richie or Molly and any state actor defendants. See Doc. 1 at 5–7, 9–18. Archer claims that Richie impeded his access to the courts by failing to communicate with court officials and other attorneys and by failing to advocate on his behalf in his criminal cases. See id. at 5, 12–15. He claims that Richie and Molly confirmed an email between Lawrence County and Butte County officials, id. at 9-10, and he makes no other claims as to Molly's involvement with the deprivation of his rights. See Doc. 1 at 5–7, 9–18. Thus, he makes no claims that Richie and Molly willfully participated in joint action with any state actor defendants. See id. Archer's claims against Richie and Molly are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 3.    Claims Against Bruce Boure and Tim Banuard

Archer brings claims against attorneys Boure and Banuard. Id. at 2–3. Archer alleges that Boure, his Codington County attorney, failed to communicate with Lawrence County officials on his behalf after stating that he would do so. Id. at 14-15. He alleges that Banuard knew of evidence that could exonerate him and failed to make "proper persons" aware of that evidence. Id. at 16. He makes no other allegations regarding Boure and Banuard. See id. at 5–7, 9–18. Archer does not claim that Boure and Banuard are state actors or that they were "willful participant[s] in joint action with the State or its agents." See Dennis, 449 U.S. at 27. Thus, Archer does not allege that Boure and Banuard acted under color of state law, and his claims against Boure and Banuard are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

**4.    Claims Against John Fitzgerald**

Archer brings claims against State's Attorney John Fitzgerald. Doc. 1 at 2. Absolute immunity shields prosecutors "from civil liability under § 1983 for prosecutorial functions such as the initiation and pursuit of a criminal prosecution, the presentation of the state's case at trial, and other conduct that is intimately associated with the judicial process." Anderson v. Larson, 327 F.3d 762, 768 (8th Cir. 2003) (citations omitted). In other words, "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993). Archer alleges that Fitzgerald misrepresented his criminal history in court, enhanced his charges, and moved his case to a "higher position of authority" in violation of his rights. See Doc. 1 at 12-13. Because these are acts that occurred during judicial proceedings "in the course of his role as an advocate for the State," Fitzgerald is entitled to absolute immunity. See Fitzsimmons, 509 U.S. at 273. Archer's claims against Fitzgerald are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

11

     5.      **Claims Against Unnamed Butte County Clerk of Court Employees and South Dakota Division of Criminal Investigation Agent D. Rose in their Official Capacities for Money Damages**

Archer brings claims against unnamed Butte County Clerk of Court employees[3] and South Dakota Division of Criminal Investigation Agent D. Rose in their official capacities for money damages. Doc. 1 at 2, 8. As the Supreme Court has stated, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citing Brandon v. Holt, 469 U.S. 464, 471 (1985)). Thus, it is a suit against the state itself. Id. While "[§] 1983 provides a federal forum to remedy many deprivations of civil liberties, . . . it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." Id. at 66.

The Eleventh Amendment generally acts as a bar to suits against a state for money damages unless the state has waived its sovereign immunity. Id. But "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983" and thus amenable to suit Id. at 71 n.10. Here, Archer seeks both money damages and injunctive relief. Doc. 1 at 8. The unnamed Butte County Clerk of Court employees[4] and Rose are state officials. See Doc. 1 at 2. The State of South Dakota has not waived its sovereign immunity. Thus, Archer's claims against unnamed Butte County Clerk of Court employees and Rose in their official capacities for

---

[3] Archer names Mail Room Staff Clerk's Office and Butte County Authorities as defendants in this lawsuit. Doc. 1 at 2. Archer's complaint references filings mailed and faxed to the Butte County Clerk of Court. Id. at 10-11. This Court assumes that Archer thus refers to the mail room staff at the Butte County Clerk of Court. See id. at 2, 10. This Court will refer to these defendants as "unnamed Butte County Clerk of Court employees" in this opinion and order.

[4] The Court takes judicial notice of the fact that unnamed Butte County Clerk of Court employees are employees of the South Dakota Unified Judicial System and are thus employees of the state of South Dakota. See S.D. Const. art. V, § 11 (explaining that "[t]he chief justice [of the South Dakota Supreme Court] is the administrative head of the unified judicial system" and that "[d]uties of clerks shall be defined by Supreme Court rule").

money damages are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915(b)(2).

### 6.    Remaining 42 U.S.C. § 1983 Claims

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).

> Thus, each Government official . . . is only liable for his or her own misconduct. As we have held, a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation.

Parrish v. Ball, 594 F.3d 993, 1001 (8th Cir. 2010) (cleaned up).  Archer's individual capacity claims must allege that each individual defendant either participated in the unconstitutional conduct or caused the conduct to occur through a failure to train or supervise the offending actor. See id.  Personal involvement by defendant state officers is not required in a plaintiff's official capacity claim for injunctive relief; all that is required is that the defendant officers, "by virtue of [their] office[s], ha[ve] some connection" with the unconstitutional policy in question.  See Ex parte Young, 209 U.S. 123, 157 (1908).

### a.    Access to the Courts Claims

Archer claims that he was denied the ability to file legal documents while incarcerated at the Lawrence County Jail. Doc. 1 at 5, 9–12, 17.  Construing his complaint liberally, Archer brings claims for violation of his First Amendment right to access the courts.  See id.  "The Constitution guarantees prisoners a right to access the courts." White v. Kautzky, 494 F.3d 677, 679 (8th Cir. 2007).  To succeed on a claim for denial of access to the courts, a plaintiff must show that he suffered actual injury as a result of the defendants' actions.  Lewis v. Casey, 518 U.S. 343, 349

(1996).  In order to satisfy the actual injury requirement, a plaintiff must "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded."  Johnson v. Missouri, 142 F.3d 1087, 1089 (8th Cir. 1998) (quoting Lewis, 518 U.S. at 353).

Here, Archer alleges facts sufficient to state a claim for violation of his right to access the courts.  Archer makes several allegations that various defendants failed to send his legal mail and other legal filings, that the Lawrence County Jail legal resources are insufficient, that lack of eyeglasses hindered his legal work, and that he was not provided legal stationary supplies.  Doc. 1 at 5, 9–12, 15, 17.  He specifically alleges that these issues prevented him from filing a petition for writ of habeas corpus.  See id. at 11.  Thus, he has pleaded facts that may satisfy the injury requirement of Lewis.  See 518 U.S. at 349.

Archer's individual capacity claims must allege that each individual defendant participated in the unconstitutional conduct or caused it to occur through a failure to train or supervise.  See Parrish, 594 F.3d at 1001.  Archer alleges that the Lawrence County Jail has insufficient legal resources and legal stationary supplies and that Little and other jail staff lied to him about sending out his legal filings.  Doc. 1 at 5, 9–12, 15.  He claims that unnamed Butte County Clerk of Court employees refused to accept his legal filings and delayed his appearances in Butte County Court.  See id. at 9–11, 17.  Although Archer does not allege that the delay alone has caused a claim to be frustrated or impeded as required by Lewis, see 518 U.S. at 349, he does allege that unnamed Butte County Clerk of Court employees prevented him from filing a petition for writ of habeas corpus.  See id. at 9–11, 17.  Thus, he alleges that Little, unnamed Lawrence County Jail employees,[5] and

---

[5] Archer names Jail Staff, Guards Lawrence County Jail, as a defendant in this lawsuit.  Doc. 1 at 3.  This Court will refer to the Lawrence County Jail staff defendants as "unnamed Lawrence County Jail employees" in this opinion and order.

14

unnamed Butte County Clerk of Court employees participated in the unconstitutional conduct. See id. at 5, 9–12, 15, 17.

Archer makes no access to the courts claims regarding Rose other than that Rose knew that his letter to a judge had not been answered and that Rose "illegally obtained information against [him]" by monitoring his calls and visits with his attorney. Doc. 1 at 16. These claims do not allege that Rose frustrated or impeded a legal claim. See id.; Lewis, 518 U.S. at 349. Archer's First Amendment access to the courts claims against Little, unnamed Lawrence County Jail employees, and unnamed Butte County Clerk of Court employees in their individual capacities survive § 1915A screening, but his First Amendment access to the courts claims against Rose in his individual capacity is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

Archer's official capacity claims for injunctive relief need only allege that each defendant, "by virtue of his [or her] office, ha[s] some connection" with the unconstitutional policy in question for which Archer seeks injunctive relief. See Ex parte Young, 209 U.S. at 157. Here, Archer claims that Little, unnamed Lawrence County Jail employees, and unnamed Butte County Clerk of Court employees have prevented him from accessing the court. Doc. 1 at 5, 9–12, 15, 17. But he does not allege that actions by Rose or the South Dakota Division of Criminal Investigation have violated his First Amendment right to access the court. See id. at 5–7, 9–18. Thus, Archer's First Amendment access to the courts claims against Little, unnamed Lawrence County Jail employees, and unnamed Butte County Clerk of Court employees in their official capacities for injunctive relief survive § 1915A screening, but his First Amendment access to the courts claims against Rose in his official capacities for injunctive relief are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

Archer also brings these claims against defendants in their official capacities for money damages. See id. at 2–3, 8. Archer's claims against unnamed Butte County Clerk of Court employees and Rose in their official capacities for money damages are discussed above. Little and unnamed Lawrence County Jail employees are employees of Lawrence County. See id. at 3. "A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity." Veatch v. Bartels Lutheran Home, 627 F.3d 1254, 1257 (8th Cir. 2010). Archer's official capacity claims against Little and unnamed Lawrence County Jail employees are equivalent to claims against Lawrence County.

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). A municipal government may be sued only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," deprives a plaintiff of a federal right. Id.; see also Clay v. Conlee, 815 F.2d 1164, 1170 (8th Cir. 1987) (finding that "the [governmental] entity's official 'policy or custom' must have 'caused' the constitutional violation" in order for that entity to be liable under § 1983).

To establish governmental liability premised on an unofficial custom rather than an official policy, a plaintiff must allege facts to support a finding of "a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees" and "deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct[.]" Brewington v. Keener, 902 F.3d 796, 801 (8th Cir. 2018) (quoting Corwin v. City of Independence, 829 F.3d 695, 700 (8th Cir. 2016)). A § 1983 complaint does not need to "specifically plead the existence of an unconstitutional policy or custom to survive a motion to dismiss." Crumpley-Patterson v. Trinity Lutheran Hosp., 388

F.3d 588, 591 (8th Cir. 2004) (citing Doe ex rel. Doe v. Sch. Dist., 340 F.3d 605, 614 (8th Cir. 2003)).  But the complaint must include some allegation, reference, or language that creates an inference that the conduct resulted from an unconstitutional policy or custom.  Id.; see also Doe, 340 F.3d at 614 ("At a minimum, a complaint must allege facts which would support the existence of an unconstitutional policy or custom.").

Archer alleges facts sufficient to state a claim for violation of his First Amendment right to access the courts against Little and unnamed Lawrence County Jail employees in their official capacities for money damages.  He alleges that his ability to file legal paperwork has been hindered by the lack of legal resources and legal stationary supplies at the Lawrence County Jail and that he has been unable to file a petition for writ of habeas corpus because of these issues.  See Doc. 1 at 5, 11, 15.  Construing his complaint liberally, he alleges that these restrictions are official Lawrence County Jail policies.  See id.  Thus, Archer's First Amendment right to access the courts claims against Little and unnamed Lawrence County Jail employees in their official capacities for money damages survive § 1915A screening.

### b.    Medical Care Claims

Archer claims that defendants have denied him medical care while incarcerated at the Lawrence County Jail.  Id. at 6.  Construing his complaint liberally, he brings claims for deliberate indifference to serious medical needs in violation of his Eighth Amendment right to be free from cruel and unusual punishment.  See id.

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment."  Estelle v. Gamble, 429 U.S. 97, 104 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)).  "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's

needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Id. at 104–05 (footnotes omitted). "This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Id. at 105. "[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106. Allegations of negligence will not suffice, nor will mere disagreement with treatment decisions. Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000) (citing Estate of Rosenberg, 56 F.3d at 37).

The deliberate indifference standard includes both an objective and subjective component. Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997)). The plaintiff "must demonstrate (1) that [he] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." Id. (citing Coleman, 114 F.3d at 784). "A serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.' " Coleman, 114 F.3d at 784 (quoting Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995)). To be liable for deliberately disregarding medical needs, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Archer makes no allegations that unnamed Butte County Clerk of Court employees or Rose were aware of and deliberately indifferent to his serious medical needs. See id. at 6. He also makes no allegations that the State of South Dakota was involved in his medical care. See id. Thus, his Eighth Amendment deliberate indifference to serious medical needs claims against

unnamed Butte County Clerk of Court employees and Rose in their individual capacities and in their official capacities for injunctive relief are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

Archer alleges facts sufficient to state claims for deliberate indifference to his serious medical needs. He alleges that he needs prescription glasses, access to a rescue inhaler as needed, lotion or oil for dry skin caused by diabetes, non-allergenic body wash or soap and deodorant, a razor for sensitive skin that he can grip despite his neuropathy, and an extra mattress for his neck and back pain. Doc. 1 at 6. Archer alleges that he has serious medical needs. See id. He claims that Little and unnamed Lawrence County Jail employees were aware of his need for prescription glasses and refused to allow him the glasses that he needed. Id. at 6, 15. But he does not allege that any individual defendants were aware of and deliberately indifferent to his other serious medical needs. See id. Instead, he only alleges that it took twenty minutes for him to receive his inhaler in one instance and that he is not provided the items he needs to accommodate his other medical issues. See id. Thus, his Eighth Amendment claim against Little and unnamed Lawrence County Jail employees in their individual capacities for deliberate indifference to serious medical needs regarding his need for glasses survives § 1915A screening, and his Eighth Amendment claims against Little and unnamed Lawrence County Jail employees in their individual capacities for deliberate indifference to his other serious medical needs are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

Although personal involvement is generally not required in official capacity claims for injunctive relief, see Ex parte Young, 209 U.S. at 157, because the alleged constitutional violation is cruel and unusual punishment in violation of the Eighth Amendment and because punishment requires intent, some level of subjective knowledge is still required. See Farmer, 511 U.S. at 844.

19

Other courts have held that this subjective component can be met through "the institution's historical indifference" rather than the knowledge held by a specific individual after that individual was substituted as the named official capacity defendant. LaMarca v. Turner, 995 F.2d 1526, 1542 (11th Cir. 1993); see also Alberti v. Sheriff of Harris Cnty., 978 F.2d 893, 894–95 (5th Cir. 1992) (per curiam) (finding "that the state knew" of severe overcrowding in Harris County jails); Terry ex rel. Terry v. Hill, 232 F. Supp. 2d 934, 944 (E.D. Ark. 2002) (considering "the entire state of Arkansas, including the executive and legislative branches," to determine whether "the State ha[d] been deliberately indifferent to the needs of pretrial detainees" because defendant, "[i]n his official capacity, . . . [was] merely a representative of . . . the State of Arkansas in the system of mental health treatment" (footnote omitted)).

Archer sufficiently alleges institutional awareness of and indifference to his serious medical needs to state official capacity claims for injunctive relief. While some of the medical issues of which he complains may not rise to the level of deliberate indifference or even of serious medical needs, this Court cannot make this determination at this early stage of litigation. See Doc. 1 at 6. He claims that he has filed grievances regarding these issues while incarcerated at the Lawrence County Jail.[6] Thus, even if individual Lawrence County Jail defendants were not aware of these issues, he has made the institution sufficiently aware to satisfy the subjective prong of his official capacity claims for injunctive relief. See LaMarca, 995 F.2d at 1542. Thus, Archer's Eighth Amendment deliberate indifference to serious medical needs claims regarding all of his

---

[6] In response to the question on the complaint form asking if he submitted a request for administrative relief, Archer checked both the "yes" and the "no" boxes and wrote that he received "no answers to [his] requests or grievances." Doc. 1 at 6. Construing his complaint liberally, this Court cannot conclude that Archer did not make Lawrence County Jail officials aware of his medical issues. See id.

alleged medical needs against Little and unnamed Lawrence County Jail employees in their official capacities for injunctive relief survive § 1915A screening.

Archer also brings these claims against Little and unnamed Lawrence County Jail employees in their official capacities for money damages. See id. at 3, 8. He must show that the deliberate indifference to his serious medical needs was caused by a Lawrence County policy or custom. See Monell, 436 U.S. at 694. Archer alleges that Little and unnamed Lawrence County Jail employees denied him access to his prescribed glasses, but he does not allege that this was caused by a Lawrence County policy or custom. See Doc. 1 at 6, 15. He alleges that one jail official told him he could use his inhaler at med pass time, rather than as needed, and that another took twenty minutes to respond when he had an asthma attack. See Doc. 1 at 6. He also alleges that he was not provided an extra mattress to help with his neck and back issues. Id. These claims do not allege a Lawrence County policy or custom. See id. at 6, 15.

Archer claims that indigent inmates such as himself are not provided lotion or oil to treat dry skin caused by diabetes, that there is no appropriate body wash or soap provided for indigent inmates who are allergic to the indigent soap option provided, that the deodorant provided to indigent inmates causes him skin issues, and that the razors provided to indigent inmates aggravate his skin issues. See id. at 6. He also claims that he cannot grip the provided razors because of neuropathy in his hands. Id. Thus, he alleges that Lawrence County Jail's indigent hygiene item policy has caused him untreated dry skin, allergy issues, skin issues, and difficulty shaving. These allegations may not ultimately concern serious medical issues to support an Eighth Amendment claim, but for now these claims regarding the indigent hygiene item policy against Little and unnamed Lawrence County Jail employees in their official capacities for money damages survive § 1915A screening. His Eighth Amendment deliberate indifference to serious medical needs

claims regarding his other medical issues against Little and unnamed Lawrence County Jail employees in their official capacities for money damages are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### c.    Conditions of Confinement Claims

Archer brings claims for threats to his safety while incarcerated at the Lawrence County Jail. Doc. 1 at 7. He claims that Lawrence County Jail officials failed to protect him from COVID and that Lawrence County Jail officials and Rose allowed other inmates to make threats towards him and his family. Id. at 6–7, 16. Construing his complaint liberally, Archer brings claims for deliberate indifference to unsafe conditions of confinement in violation of the Eighth Amendment. See id.

"[T]he Constitution 'does not mandate comfortable prisons'; it prohibits 'inhumane ones.' " Williams v. Delo, 49 F.3d 442, 445 (8th Cir. 1995) (quoting Farmer, 511 U.S. at 832). The Supreme Court has clarified that only "extreme deprivations" that deny "the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Hudson v. McMillian, 503 U.S. 1, 9 (1992) (internal quotation omitted). The Supreme Court has listed as basic human needs "food, clothing, shelter, medical care, and reasonable safety[.]" Helling v. McKinney, 509 U.S. 25, 32 (1993) (internal quotation omitted).

In order to prevail on an Eighth Amendment conditions of confinement claim, a prisoner must prove that (1) objectively, the deprivation was "sufficiently serious" to deprive him of "the minimal civilized measure of life's necessities" or to constitute "a substantial risk of serious harm" to his health or safety; and (2) subjectively, the defendants were deliberately indifferent to the risk of harm posed by the deprivation. Simmons v. Cook, 154 F.3d 805, 807 (8th Cir. 1998) (quoting Farmer, 511 U.S. at 834). An Eighth Amendment challenge to conditions of confinement requires

22

examining the totality of the circumstances. Villanueva v. George, 659 F.2d 851, 854 (8th Cir. 1981) (en banc). Even if no single condition would be unconstitutional in itself, the cumulative effect of prison conditions may subject inmates to cruel and unusual punishment. See id.; see also Tyler v. Black, 865 F.2d 181, 183 (8th Cir. 1989) (en banc).

Under Farmer, an inmate need not "await a tragic event" when seeking a preventative remedy for unsafe conditions. 511 U.S. at 845 (quoting Helling, 509 U.S. at 33–34). Although Farmer was decided in the context of an inmate seeking injunctive relief to prevent future harm, the Eighth Circuit has applied this principle to claims seeking both injunctive relief and money damages. See Blackmon v. Lombardi, 527 F. App'x 583, 585 (8th Cir. 2013) (per curiam).[7]

Archer makes no allegations that unnamed Butte County Clerk of Court employees were aware of and deliberately indifferent to unsafe conditions of confinement. See id. at 6–7, 16. He also makes no allegations that Butte County was responsible for his confinement. See id. Thus, his Eighth Amendment deliberate indifference to unsafe conditions of confinement claims against unnamed Butte County Clerk of Court employees in their individual and official capacities are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

Archer alleges facts sufficient to state Eighth Amendment claims for deliberate indifference to unsafe conditions of confinement. He claims that Little "deliberately expose[d] [him] to COVID" until he tested positive. Id. at 6. Construing his complaint liberally, Archer alleges that unnamed Lawrence County Jail employees contributed to these unsafe conditions as well. See id. at 6–7. He claims that Little and unnamed Lawrence County Jail employees made

---

[7] In Blackmon, the Eighth Circuit did not comment on the relief sought by the plaintiff. See 527 F. App'x at 583–85. But the Western District of Missouri ruling overturned in relevant part by the Eighth Circuit noted that the plaintiff sought "injunctive relief and $4,000,000.00 in damages." Blackmon v. Lombardi, 2013 WL 12145820, at *1; 2013 U.S. Dist. LEXIS 196445, at *3 (W.D. Mo. Jan. 28, 2013).

his personal information available to jail inmates who used and continue to use that information to make threats towards him and his family. Id. at 7. He also claims that Little and Rose were made aware of these threats and failed to do anything to prevent them. Id. at 16. Deliberate COVID exposure and targeted threats may constitute substantial risks of serious harm. See Simmons, 154 F.3d at 807 (citing Farmer, 511 U.S. at 834). Archer alleges that Little, unnamed Lawrence County Jail employees, and Rose were aware of and deliberately indifferent to these risks. Thus, his Eighth Amendment claims against Little, unnamed Lawrence County Jail employees, and Rose in their individual capacities and in their official capacities for injunctive relief for unsafe conditions of confinement survive § 1915A screening.

Archer also brings these claims against Little and unnamed Lawrence County Jail employees in their official capacities for money damages. See id. at 3, 6–7, 16. He must show that the deliberate indifference to unsafe conditions of confinement was caused by a Lawrence County policy or custom. See Monell, 436 U.S. at 694. Archer makes no allegations that the COVID exposure or the threats made to him and his family were caused by a Lawrence County Policy or custom. See Doc. 1 at 6–7, 16. Thus, his Eighth Amendment claims against Little and unnamed Lawrence County Jail employees in their official capacities for money damages are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### d.    Fourteenth Amendment Claims

Archer expresses a desire to bring Fourteenth Amendment claims in his complaint, but he does not state which Fourteenth Amendment rights defendants have violated. See id. at 5–7. Archer claims that Lawrence County Jail officials failed to respond to his grievances and that he has lost property as a result of his inability to access the courts. Id. at 5–7, 15. Construing his

24

complaint liberally, Archer brings Fourteenth Amendment procedural due process claims for failure to process grievances and for deprivation of property. See id.

"While a violation of a state-created liberty interest can amount to a violation of the Constitution, not every violation of state law or state-mandated procedures is a violation of the Constitution." Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (per curiam) (holding that a refusal to process grievances alone did not state a constitutional deprivation.). "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates. Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the [F]ourteenth [A]mendment." Id. (first alteration in original) (quoting Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); see also King v. Houston, 556 F. App'x 561, 563 (8th Cir. 2014) (per curiam) (explaining that, under Buckley, "prison officials' failure to process or investigate grievances, without more, is not actionable under § 1983" (citing 997 F.2d at 495)). Archer claims that Lawrence County Jail officials failed to respond to his grievances. Doc. 1 at 5–7, 16. These claims fail under Buckley. See 997 F.2d at 495. Thus, Archer's Fourteenth Amendment procedural due process claim for failure to respond to grievances is dismissed without prejudice under 28 U.S.C §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

Under the Fourteenth Amendment, a "State [cannot] deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1. An intentional deprivation of property does not violate due process if there is an adequate post-deprivation remedy. Hudson v. Palmer, 468 U.S. 517, 533 (1984). But when "the property deprivation is effected pursuant to an established state procedure[,]" a post-deprivation state remedy does not satisfy due process. Id. at 534 (citing Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982)). SDCL § 21-3-3 recognizes a cause of action for wrongful conversion of personal property. Archer makes no allegations that

the deprivation of property occurred "pursuant to an established state procedure." See Palmer, 468 U.S. at 534. Thus, an adequate post-deprivation remedy exists, and Archer's Fourteenth Amendment due process claim for deprivation of property is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

## III.   Motion for Appointment of Counsel

Archer has filed a motion for appointment of counsel. Doc. 5. "A pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case." Stevens v. Redwing, 146 F.3d 538, 546 (8th Cir. 1998). In determining whether to appoint counsel to a pro se litigant, this Court considers the complexity of the case, the ability of the litigant to investigate the facts, the existence of conflicting testimony, and the litigant's ability to present his claims. Id. At this time, Archer's claims do not appear to be complex, and he is able to investigate the facts and present his claims adequately. This Court believes that Archer is capable of pursuing his claims pro se at this phase of litigation, and his motion for appointment of counsel, Doc. 5, is denied.

## IV.   Order

Accordingly, it is

ORDERED that Archer's motion for leave to proceed in forma pauperis, Doc. 2, is granted, and his initial filing fee is waived. It is further

ORDERED that the institution having custody of Archer is directed that whenever the amount in Archer's trust account, exclusive of funds available to him in his frozen account, exceeds $10.00, monthly payments that equal 20 percent of the funds credited the preceding month to Archer's trust account shall be forwarded to the U.S. District Court Clerk's Office under 28 U.S.C. § 1915(b)(1), until the $350 filing fee is paid in full. It is further

26

ORDERED that Archer's claims under 18 U.S.C. § 242 are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915(b)(1).  It is further

ORDERED that Archer's claims against John Fitzgerald are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915(b)(2).  It is further

ORDERED that Archer's claims against unnamed Butte County Clerk of Court employees and D. Rose in their official capacities for money damages are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915(b)(2).  It is further

ORDERED that Archer's First Amendment access to the courts claims against Tavis Little, unnamed Lawrence County Jail employees, and unnamed Butte County Clerk of Court employees in their individual capacities and in their official capacities for injunctive relief survive § 1915A screening.  It is further

ORDERED that Archer's First Amendment access to the courts claims against Little and unnamed Lawrence County Jail employees in their official capacities for money damages survive § 1915A screening.  It is further

ORDERED that Archer's Eighth Amendment deliberate indifference to serious medical needs claim regarding his need for prescription glasses against Little and unnamed Lawrence County Jail employees in their individual capacities survives § 1915A screening.  It is further

ORDERED that Archer's Eighth Amendment deliberate indifference to serious medical needs claims regarding all his alleged medical needs against Little and unnamed Lawrence County Jail employees in their official capacities for injunctive relief survive § 1915A screening.  It is further

ORDERED that Archer's Eighth Amendment deliberate indifference to serious medical needs claims regarding the indigent hygiene item policy against Little and unnamed Lawrence

County Jail employees in their official capacities for money damages survive § 1915A screening. It is further

ORDERED that Archer's Eighth Amendment unsafe conditions of confinement claims against Little, unnamed Lawrence County Jail employees, and Rose in their individual capacities and in their official capacities for injunctive relief survive § 1915A screening. It is further

ORDERED that Archer's remaining claims against all defendants are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915(b)(1). It is further

ORDERED that Archer's motion for appointment of counsel, Doc. 5, is denied. It is further

ORDERED that the Clerk shall send blank summons forms and U.S. Marshals Service forms (Form USM-285) to Archer so that he may complete the form to cause the complaint to be served upon Defendants Little, unnamed Lawrence County Jail employees, and Rose. It is further

ORDERED that Archer shall complete and send the Clerk of Court a separate summons and USM-285 form for each defendant. Upon receipt of the completed summons and USM-285 forms, the Clerk of Court will issue the summonses. If the completed summons and USM-285 form are not submitted as directed, the complaint may be dismissed. It is further

ORDERED that the United States Marshals Service shall serve the completed summonses, together with a copy of the complaint, Doc. 1, and this order upon the defendants. It is further

ORDERED that the defendants will serve and file an answer or responsive pleading to the complaint on or before 21 days following the date of service or 60 days if the defendant falls under Fed. R. Civ. P. 12(a)(2) or (3). It is finally

ORDERED that Archer will keep the court informed of his current address at all times. All parties are bound by the Federal Rules of Civil Procedure and by the court's Civil Local Rules while this case is pending.

28

DATED May **16**, 2023.

BY THE COURT:

_____

ROBERTO A. LANGE
CHIEF JUDGE